IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED WITH CALL NUMBER (760) 686-4039 THAT IS IN THE CUSTODY OR CONTROL OF VERIZON | Case No. 19-mj-8063-TJJ<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, **Task Force Officer Cristin Stammler**, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular device assigned **call number (760) 686-4039** ("the SUBJECT ACCOUNT"), with listed subscriber **Shay Montgomery**, that is in the custody or control of **Verizon**, a wireless communications service provider that is headquartered at **1095 Avenue of the Americas, New York, New York**. As a provider of wireless communications service, **Verizon** is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2. The information to be searched is described in the following paragraphs. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require **Verizon** to disclose to the government the information further described in Section I of Attachment A. Upon receipt of the information described in Section I of Attachment A, government-authorized persons will review the information to locate items described in Section II of Attachment A.

3. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. See 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. See 18 U.S.C. § 3123(b)(1).

4. I am a Task Force Officer of the Federal Bureau of Investigation (FBI) and have been employed as a Police Officer by the Kansas City, Missouri Police Department since April 2006. My previous assignments included the Patrol Division, Robbery Unit, and the Homicide Unit. I am currently assigned to the Financial Investigations Section and am a Task Force Officer with the Federal Bureau of Investigation. In connection with my official duties, I investigate criminal violations of the Controlled Substances Act, among other crimes. My training and experience has involved, among other things: (a) the debriefing of defendants, witnesses, and informants who have knowledge of the distribution and transportation of controlled substances, and of money laundering and concealment of proceeds; (b) surveillance; (c) analysis of documentary and physical evidence; (d) participation in previous wire intercept investigations; and (e) investigating money laundering cases. I have participated in over 100 investigations that involved, at least in part, the use of cellular telephones.

5. The facts in this affidavit come from my training and experience, my review of documents, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe violations of 18 U.S.C. §§ 1956(h) and 1956(a)(3) have been committed by Nickolas Vander Bruggen (BRUGGEN). BRUGGEN was charged with these crimes, on February 13, 2019 (in District of Kansas Case No. 19-20007-02-CM) and is the subject of an arrest warrant issued on the same date in the District of Kansas. There is also probable cause to believe BRUGGEN is aware of these charges and has fled. There is also probable cause to believe the location information, described in Attachment A, will assist law enforcement in arresting BRUGGEN, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

7. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8. The United States, including the FBI, is conducting a criminal investigation of **BRUGGEN** regarding possible violations of 18 U.S.C. §§ 1956(h) and 1956(a)(3).

9. On February 13, 2019, an arrest warrant for BRUGGEN was issued in the District of Kansas (Case No. 19-20007-02-CM) for violations of 18 U.S.C. §§ 1956(h) and 1956(a)(3).

10. During the investigation, officers obtained data from a co-conspirator's cellular phone. On the phone, officers observed text messages related to drug trafficking and drug payments. The observed text messages were with the SUBJECT ACCOUNT. The contact in the co-conspirator's cellular phone was listed as "Nick Hesperia."

11. Investigators determined, via subpoena, the service provider for the SUBJECT ACCOUNT was Verizon. The SUBJECT ACCOUNT subscriber was revealed to be Shay Montgomery and her billing address was the same address used by BRUGGEN - 15966 Live Oak Street, Hesperia, California. Investigators identified Montgomery as BRUGGEN's mother.

12. Beginning on February 15, 2019, several attempts have been made by law enforcement to locate and arrest BRUGGEN.

13. On February 19, 2019, a vehicle associated to BRUGGEN was captured on a license plate reader in or around Chino, California. Chino is a city located in the Los Angeles, California metro area.

14. On February 20, 2019, Montgomery advised law enforcement she had been in contact with BRUGGEN and he was aware he had an outstanding arrest warrant. Montgomery said she told BRUGGEN to turn himself in; however, she did not believe he would do so voluntarily.

15. On March 8, 2019, Montgomery told law enforcement BRUGGEN used the SUBJECT ACCOUNT and she had been contacting BRUGGEN on the SUBJECT ACCOUNT. Montgomery believed BRUGGEN was staying somewhere in the Los Angeles metro area.

16. On March 13, 2019, Verizon was contacted and confirmed the SUBJECT ACCOUNT was still active.

17. In my experience, subscriber information has yielded information in past investigations that is relevant and material to criminal investigations and fugitive apprehension. Such information includes leads relating to the names of family members, associates, friends and other individuals who may assist or aid the suspect and/or fugitive from justice. Based upon my training and experience, one way to identify associates may be to obtain subscriber information

and call detail records for calls made to and from the SUBJECT ACCOUNT and then conduct an investigation concerning those names and addresses.

18. I am also aware that the general geographic location of the SUBJECT ACCOUNT, derived from cell site information used by the SUBJECT ACCOUNT, can be used to corroborate the observations of surveillance agents. More specifically, surveillance agents can compare observations of the SUBJECT ACCOUNT's user with cell site information in order to verify the identification and location of the SUBJECT ACCOUNT's user.

19. In my training and experience, I have learned that **Verizon** is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

20. Based on my training and experience, I know that **Verizon** can collect cell-site data on a prospective basis about the SUBJECT ACCOUNT. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone

numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as **Verizon** typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

21. Based on my training and experience, I know that **Verizon** also can collect per-call measurement data, which **Verizon** also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

22. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

23. Based on my training and experience, I know that wireless providers such as **Verizon** typically collect and retain information about their subscribers in their normal course of

business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as **Verizon** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT ACCOUNT's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

24.  Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41. The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A for each communication to or from the SUBJECT ACCOUNT, without geographic limit, for a period of forty-five days (45) days pursuant to 18 U.S.C. § 3123(c)(1).

25.  I further request that the Court direct **Verizon** to disclose to the government any information described in Section I of Attachment A that is within its possession, custody, or control. Because the warrant will be served on **Verizon**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

26. Further, because the requested warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3123(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an Order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

### PROSECUTOR APPLICATION AND CERTIFICATION PURSUANT TO 18 U.S.C. § 3121 *et seq.*

27. Because the above Application and Affidavit in Support of a Search Warrant seeks prospective cell-site location information which constitutes "dialing, routing, addressing, or signaling information" that falls within the scope of the Pen Register Act, 18 U.S.C. § 3121 *et seq.*, and may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) and (4), the undersigned Attorney for the Government, as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure, also applies to this Court pursuant to the Pen Register Act seeking authority to obtain the above-requested prospective cell-site location information. The undersigned certifies that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the U.S. Marshals Service, as further detailed above, and incorporated herein. *See* 18 U.S.C. §§ 3122(b). The requested warrant is designed to comply with the Pen Register Act and therefore includes all the information required to be in an order issued pursuant to the statute. *See* 18 U.S.C. § 3123(b)(1).

s/ Trent M. Krug
Trent M. Krug

Assistant United States Attorney
500 State Ave., Suite 360
Kansas City, KS  66101
Tele:   913-551-6730
Fax:    913-551-6541
Trent.Krug@usdoj.gov
Ks S.Ct.No. 19454

28.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until thirty (30) days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution; further, premature disclosure could endanger law enforcement during their efforts to locate and apprehend the fugitive.  *See* 18 U.S.C. § 3103a(b)(1).  The proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any non-content wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

29.     There is reason to believe that notification of the existence of this Application and any Court order issued will seriously jeopardize the investigation, including giving the subject(s) an opportunity to: endanger the life or physical safety of law enforcement attempting to effectuate the arrest or bystanders thereto, flee from prosecution, destroy and/or tamper with

evidence, change patterns of behavior, or notify confederates. *See* 18 U.S.C. § 2705(b)(1)-(3), (5). As such, the United States further requests, pursuant to 18 U.S.C. §§ 3123(d)(2) and 2705(b), that the Court order **Verizon** and any other person or entity whose assistance facilitates execution of the warrant, and their agents and employees, not to disclose in any manner, directly or indirectly, by any action or inaction, the existence of this application and warrant, or this investigation, except as necessary to effectuate the warrant, for one year from the date of the warrant unless otherwise ordered by this Court. I request these documents may be disclosed if and as required for discovery purposes without further order of this Court.

30. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

_____
CRISTIN STAMMLER
Task Force Officer
Federal Bureau of Investigation

Sworn and attested by affiant via telephone, after being submitted to me by reliable electronic means on this 25th day of March, 2019.

_____
HONORABLE JAMES P. O'HARA
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information for the Target Cell Phone is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed:

    a. The following information about the customers or subscribers associated with the SUBJECT ACCOUNT for the time period February 13, 2019 through the date of this warrant:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

    ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the SUBJECT ACCOUNT, including:

    (A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

    (ii) information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the SUBJECT ACCOUNT for a period of 45 days from the date of this warrant, including:

    i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

    ii. Source and destination telephone numbers;

    iii. Date, time, and duration of communication; and

    iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the SUBJECT PHONE will connect at the beginning and end of each communication as well as per-call measurement data (also known as "real-time tool" or "RTT").

## II. Information to be Seized by the Government

All information described above in Section I that constitutes [evidence, fruits, contraband, and instrumentalities] of violations of 18 U.S.C. §§ 1956(h) and 1956(a)(3) involving **BRUGGEN** during the period February 13, 2019 through the date of this warrant.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)**

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Verizon, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Verizon. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of **Verizon**, and they were made by **Verizon** as a regular practice; and

b. such records were generated by **Verizon's** electronic process or system that produces an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of **Verizon** in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by **Verizon,** and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____   _____
Date                      Signature